UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACK CONANT, et al.,

       Plaintiffs,                      Case No. 2:10-cv-496
                                            JUDGE GREGORY L. FROST
   v.                                  Magistrate Judge Mark R. Abel

MORGAN'S FOODS, INC., et al.,

       Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion to compel arbitration and to dismiss or stay the proceedings (ECF No. 22), Plaintiffs' memorandum in opposition (ECF No. 24), and Defendants' reply memorandum (ECF No. 25). For the reasons that follow, the Court finds the motion not well taken.

### I.  Background

The parties generally agree on the core facts relevant to the issue before the Court today. Plaintiffs, Jack and Jennifer Conant, previously worked for a Kentucky Fried Chicken ("KFC") restaurant in Marietta, Ohio. Defendant Morgan's Foods, Inc. owns this KFC franchise, and Defendant Rebecca Burwell is an assistant manager of the restaurant. Jack Conant claims that throughout his employment at KFC, he was subjected to a sexually hostile work environment that allegedly included verbal and physical harassment. Both plaintiffs claim that they were also forced to work off the clock and then retaliated against for complaining to management over unpaid wages and various alleged health and safety violations. Plaintiffs asserted these claims

1

by initiating this action on June 2, 2010. (ECF No. 2.) Six months later, Defendants filed a motion to compel arbitration and to dismiss or stay the proceedings. (ECF No. 22.) The parties have completed briefing on the motion, which is ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Defendant moves this Court to compel arbitration and to dismiss or stay this litigation during the arbitration period. The Sixth Circuit has explained the inquiry related to such a motion:

> When considering a motion to stay proceedings and compel arbitration under the [Federal Arbitration] Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000) (citing *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)).

### B.  Analysis

Defendants argue that this Court must stay or dismiss the instant action while the parties' dispute (including all counterclaims) proceeds to mandated arbitration. To support this asserted mandate, Defendants direct this Court to the employment applications that Plaintiffs completed with Morgan's Foods, Inc. The last page of the application submitted by Jack Conant included the following provision:

ARBITRATION OF EMPLOYEE RIGHTS

> Because of the delay and expense of the court systems, Morgan's Foods, Inc. and I agree to use confidential binding arbitration for any claims that arise between me and Morgan's Foods, Inc[.], its related companies, and/or their current or former employees. Such claims would include any concerning compensation, employment (including, but not limited to any claims concerning sexual harassment), or termination of employment. Before arbitration, I agree: (i) first, to present any such claims in full written detail to Morgan's Foods, Inc[.]; (ii) next, to complete any Morgan's Foods Inc. internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) will apply.

(ECF. No. 22-2, at 2)  The last page of the application submitted by Jennifer Conant included the following similar provision:

ARBITRATION OF EMPLOYEE RIGHTS

> Because of the delay and expense of the court systems, Morgan's Foods, Inc. and I agree to use confidential binding arbitration for any claims that arise between me and Morgan's Foods, Inc[.], its related companies, and/or their current or former employees. Such claims would include any concerning compensation, employment (including, but not limited to any claims concerning sexual harassment or any claim of illegal employment discrimination based on race, gender, national origin, religion, military affiliation, age discrimination, disability, or claims relating to wages, overtime pay or family or medical leave rights) or termination of employment. Before arbitration I agree: (i) first, to present any such claims in full written detail to Morgan's Foods, Inc[.]; (ii) next, to complete any Morgan's Foods Inc. internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) will apply.

(ECF No. 22-3, at 2.)  Each plaintiff signed and dated their respective application immediately below the arbitration provision.

Plaintiffs contest the application of the arbitration provisions. They posit that Defendants have waived the right to invoke the provisions, that, regardless of waiver, the provisions are unconscionable and therefore unenforceable, and that laches precludes reliance on the

provisions.

A threshold issue implicitly raised by the parties' debate is whether the issue of whether their claims must proceed to arbitration is even a matter properly before this Court. The United States Supreme Court has explained that

> a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. See *id.,* at 943-946, 115 S.Ct. 1920 (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, *e.g., AT & T Technologies, supra,* at 651-652, 106 S.Ct. 1415 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241-243, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement).

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). *See also Stout*, 228 F.3d at 714 ("When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue."). Thus, the issue of whether all of the issues involved herein are subject to arbitration is indeed for this Court, while the issue of whether a party has satisfied the prerequisites to arbitration is a matter for the arbitrator. *Howsam*, 537 U.S. at 84 (stating that " ' "procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide" (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) and that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.' " (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24-25

4

(1983))).  *See also United Steelworkers of Am., AFL-CIO-CLC, v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 419-20 (6th Cir. 2007).

Having concluded that this Court can address the arbitration dispute, the Court now turns to the issue of possible waiver of the arbitration provisions involved.  Assuming *arguendo* that both provisions are potentially enforceable and that all of the claims involved in this litigation are potentially arbitrable, the Court must conclude that under all of the circumstances present here, Defendants' conduct has waived any right to compel arbitration.

As Plaintiffs explain in their memorandum in opposition, Defendants' pre-litigation conduct does not point to a desire to pursue arbitration.  Although the employment applications contained the boilerplate arbitration provisions, management consistently failed for years to direct Plaintiffs' grievances to arbitration and instead either handled the grievances informally or invited Jack Conant to quit.  But even more harmful to invocation of the previously ignored arbitration provisions is that Defendants' litigation conduct has been notably inconsistent with pursuing arbitration while Defendants periodically paid lip service to arbitrating.

Whether litigation conduct is inconsistent with invocation of an arbitration provision so as to constitute waiver is within this Court's purview.  Courts, including the First Circuit, have held that the issue of waiver based on litigation conduct is best suited for judicial disposition rather than left for disposition by an arbitrator.  *See, e.g., Marie v. Allied Home Mort. Corp.*, 402 F.3d 1, 11 (1st Cir. 2005).  Other judicial officers in this District have agreed with the First Circuit's rationale.  *See Reidy v. Cyberonics, Inc.*, No. 1:06-CV-249, 2007 WL 496679, at *2-8 (S.D. Ohio Feb. 8, 2007); *Konica Minolta Bus. Solutions, U.S.A., Inc. v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 WL 382746 1, at *10 (S.D. Ohio Dec. 27, 2006).  Most importantly,

the Sixth Circuit has expressly recognized "the traditional rule that the courts presumptively resolve waiver-through-inconsistent-conduct claims." *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008). The court of appeals has explained the rationale behind the rule, in part by relying on the First Circuit:

> Unlike contractually-based waiver, courts have long decided whether conduct inconsistent with reliance on an arbitration agreement waives a defendant's ability to seek an arbitration referral for at least two good reasons. *Marie*, 402 F.3d at 12-13. First, contracting parties likely would not expect arbitrators to resolve these issues because they rarely touch on a dispute's merits. *Id.* at 13. Comparing the expertise of arbitrators and judges only confirms this expectation. Waiver-through-conduct issues ordinarily turn on whether a plaintiff abused the litigation or pre-litigation process, and a court is most adept at policing procedure-abusing conduct. *Id.* Second, referring waiver-through-inconsistent-conduct claims to an arbitrator would often prove "exceptionally inefficient" because just deciding that a party waived arbitration fails to advance the substance of the case-it just gets referred back to the court. *Id.* "This is different in kind from the arbitrator's normal resolution of a gateway issue: normally, the resolution of such an issue would bar not only arbitration but any sort of litigation on the issues by either side." *Id.* at 14. Judicially resolving these claims thus "will help better to secure a fair and expeditious resolution of the underlying controversy." *Howsam,* 537 U.S. at 85, 123 S.Ct. 588. For these reasons, we conclude that *Howsam* did not disturb the traditional rule that the courts presumptively resolve waiver-through-inconsistent-conduct claims.

*Id.* Thus, the Sixth Circuit "join[ed] the First and Third Circuits in holding that the court, not the arbitrator, presumptively evaluates whether a defendant should be barred from seeking a referral to arbitration because it has acted inconsistently with reliance on an arbitration agreement." *Id.* at 393. This Court can therefore properly examine whether Defendants' litigation conduct precludes arbitration.[1]

---

[1] In their briefing, Plaintiffs at times conflate prerequisites to arbitration with conduct inconsistent with reliance on the arbitration provisions. For example, they argue that arbitration would prejudice them because they have not pursued administrative agency remedies, a prerequisite to arbitration. This is not litigation conduct by Defendants that is inconsistent with

Defendants in the instant case have actively participated in litigation without timely moving for arbitration. This is important because, as *Reidy* counsels, "[a] party can waive its right to arbitration 'when the party actively participates in litigation or acts inconsistently with its rights to proceed with arbitration.' " 2007 WL 496679, at *4 (quoting *Uwaydah v. Van Wert County Hosp.*, 246 F. Supp. 2d 808 (N.D. Ohio 2002)). Such a conclusion informs today's dispute, where Defendants' litigation conduct is at odds with any asserted right to proceed to arbitration.

Review of the docket indicates that Defendants routinely stated that they regarded arbitration was warranted while consistently acting in a manner inconsistent with the timely invocation of any right to arbitration. On June 2, 2010, Plaintiffs filed the instant action. (ECF No. 2.) Defendants filed an answer to an amended complaint on September 23, 2010, and, notably, asserted several counterclaims rather than filing a motion to delay the pleading and to compel arbitration. (ECF No. 14.) During October 2010, the parties then participated in a series of meetings that resulted in a joint Federal Rule of Civil Procedure 26(f) report, the next stage in the litigation process. (ECF No. 18.) That report indicates that Defendants assert that the Court lacks jurisdiction over Plaintiffs' claims because of the arbitration clauses. Importantly, however, the report also outlines Defendants' discovery plans and sets forth *mutually recommended* discovery dates. The Magistrate Judge held a preliminary pretrial conference and issued a Preliminary Pretrial Order that, although noting that Defendants asserted a lack of jurisdiction, also memorialized the parties' *joint* recommendations concerning discovery and other case deadlines. (ECF No. 19.)

---

invocation of the arbitration provisions.

A period of discovery followed in which Defendants apparently served eighty interrogatories and ninety-nine requests for the production of documents on Plaintiffs (all apparently as yet unanswered by Plaintiffs). Just over a month after this Court filed a Scheduling Order (ECF No. 20) and a Notice of Final Pretrial and Trial (ECF No. 21), and two weeks after the deadline for amendment of the pleadings had passed (ECF No. 19, at 2), Defendants only then filed their motion to compel arbitration and to dismiss or stay the proceedings (ECF No. 22) on the last day permitted by the Magistrate Judge (ECF No. 19, at 1-2).

Defendant's conduct amounts to actions that are inconsistent with the timely invocation of arbitration. *Cf. Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (holding by a court, not an arbitrator, that a party can waive an agreement to arbitrate through actions that are inconsistent with reliance on the arbitration agreement); *see also O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 355-57 (6th Cir. 2003) ("while there is a strong presumption in favor of enforcing arbitration rights, both this Court and our sister circuits have been willing to find under appropriate circumstances that a party has waived its right to arbitrate by virtue of its actions in delaying the right to the point of prejudicing the other party"); *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 14 (1st Cir. 2003) (finding forfeiture of right to arbitrate); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (recognizing that actions inconsistent with a contractual right to arbitration can forfeit the right to compel arbitration). While continually paying lip service to a desire to arbitrate, Defendants purposefully availed themselves of the litigation process, filing counterclaims, framing a case schedule, participating in discovery, and letting Plaintiffs'

8

deadline to amend the pleadings pass.

Defendants characterize their conduct as merely the result of their being "required to engage in certain preliminary litigation activities mandated by the Federal Rules of Civil Procedure as well as this Court." (ECF No. 25, at 6.) But this argument ignores the fact that any party at any time may seek relief from litigation responsibilities via a motion; in this Court's experience, few attorneys are shy about asking for stays or extensions for good reasons, for poor reasons, and often for no real reason at all. Defendants could and should have sought to compel arbitration at the outset while concurrently moving this Court to stay the litigation phases in which Defendants actively participated. *See, e.g., JPD, Inc.*, 539 F.3d at 390 (party seeking to stay the case and to compel arbitration filed its motion after plaintiff filed suit).[2] The fact that Defendants did not do so is not wholly dispositive of the arbitration issue, but it does inform evaluation of their dilatory arbitration-related conduct.

Only after causing Plaintiffs to expend money and to frame their case against Defendants more concretely did Defendants belatedly act on their periodic threat of invoking arbitration. This point is not dispositive. But ordering arbitration would reward Defendants' conduct while ignoring that they litigated this case for months, as well as the effects of that strategic choice on Plaintiffs and the fact that Defendants' actions contributed to the consumption of judicial resources by requiring the Magistrate Judge to hold a conference and prepare an order and

---

[2] The distinguishable district court proceedings in *JPD, Inc. v. Chronimed Holdings, Inc.* actually took place before the undersigned judicial officer. In that case, the action was filed on July 9, 2007, and the defendant filed a motion to stay the litigation and to compel arbitration on July 27, 2007. (ECF Nos. 2, 3 in 2:07-cv-646.) The prompt invocation of arbitration rights without concurrent litigating of the case stands in stark contrast to the extended period of months-long litigation activity by Defendants that exists here between the filing of the instant case and the eventual motion to compel arbitration and to dismiss or stay the proceedings.

triggering the undersigned's setting a case schedule that included a trial date.

The Sixth Circuit has explained that "[t]hough we have declined to sharply define what conduct suffices [to constitute waiver], it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate." *JPD, Inc.*, 539 F.3d at 393.  Defendants failed to timely invoke arbitration here while electing to first participate in the litigation process until they deemed that process undesirable. These compelling circumstances present waiver of the arbitration provisions, even in light of the strong presumption favoring arbitration.  This is an atypical result, but it is a result compelled by an unusual set of circumstances in which Defendants have treated the litigation process as something to be tried and then discarded at whim in favor of another method of resolving the parties' disputes.  Having concluded that waiver exists, this Court need not and does not address Plaintiffs' alternative moot arguments against compelled arbitration.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion to compel arbitration and to dismiss or stay the proceedings.  (ECF No. 22.)

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE